J-S12038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                              :             PENNSYLVANIA
                                              :

         v.                                  :
                                              :

KEVIN BLENMAN                   :
                                            :

         Appellant                :     No. 838 EDA 2020

Appeal from the PCRA Order Entered February 26, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013908-2012

BEFORE: LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: MAY 28, 2021**

Kevin Blenman ("Blenman") appeals from the Order dismissing his

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").

***See*** 42 Pa.C.S.A. §§ 9541-9546.  We affirm in part, reverse in part, and

remand for further proceedings.

This Court previously set forth the factual history underlying this appeal

as follows:

> On November 5, 2012, Philadelphia [P]olice [O]fficer Jeffrey
> Opalski (["]Officer Opalski["]), along with his partner[,] Officer
> Mundrick, were on patrol in an unmarked police car in plain
> clothes.  At the time, Officer Opalski had been a police officer for
> two[-]and[-]a[-]half years with ten firearm-related arrests, along
> with specific training in firearms and the methods in which they
> are carried on a person.  The officers were traveling along the
> 5100 block of Viola Street in Philadelphia, when they observed
> [Blenman] standing in front of an abandoned building.  Officer
> Opalski testified that drug sales are typically conducted in and
> around abandoned properties.  The officers were patrolling in that
> specific area because there were reports of drug sales and gun
> violence associated with rival drug gangs.  As the officers drove

down Viola Street, [Blenman] looked in their direction, [and] turned and walked through an alleyway next to an abandoned house. The officers then continued down Viola Street, circled the block a few times, and again spotted [Blenman] on a nearby block. At this time, he was walking with a noticeable limp and had a large bulge in the front area of his waistband. The officers stopped their car, exited[,] and identified themselves as police officers. Immediately[,] [Blenman] grabbed his waistband area and ran from the officers. After running for about a block, the officers observed [Blenman] remove a large silver revolver from his waistband[,] and discard it in a pile of trash bags. He was arrested shortly thereafter.

*Commonwealth v. Blenman*, 178 A.3d 134 (Pa. Super. 2017) (unpublished memorandum at 1) (footnotes and brackets omitted). Blenman was subsequently charged with persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1]

In its Opinion, the PCRA? court summarized the procedural history that followed:

Following his arrest, [Blenman] attended a preliminary arraignment at which his bail was set at ten percent of $500,000. On November 21, 2012, [Blenman] attended his preliminary hearing[,] at which his three charges were held for court. By [O]rder, dated December 6, 2012, [Blenman's] bail status was changed from the previous monetary bail to a "release on recognizance" ("ROR") bail. [Blenman] remained in custody due to a detainer issued by the Pennsylvania Board of Probation and Parole[, relative to parole he was serving for a conviction in Lebanon County].

On January 23, 2013, [Blenman] filed an omnibus pre-trial [M]otion, including a [M]otion to [S]uppress physical evidence. On December 1, 2014, following several delays, a hearing on

---

[1] *See* 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108.

[Blenman's] [M]otion to [S]uppress was heard and was subsequently denied. Following a stipulated bench trial on February 3, 2016, [Blenman] was found guilty of three violations of the Uniform Firearms Act. For his convictions, [Blenman] was sentenced[,] on April 14, 2016, to an aggregate term of five years to ten years[ in prison,] and a consecutive term of five years[ of] probation. [Blenman] did not file any post-sentence motions.

On May 11, 2016, Blenman filed a timely [N]otice of [A]ppeal to [this Court]. [This Court] subsequently affirmed [Blenman's] convictions and judgment of sentence on September 5, 2017.... [**See Blenman**, **supra**.[2]] On September 20, 2017, [Blenman] timely filed the present [P]etition for relief pursuant to the PCRA. After being appointed counsel, [Blenman] filed an [A]mended [P]etition for relief through counsel. On February 26, 2020, [after providing Pa.R.Crim.P. 907 Notice of its intent to dismiss Blenman's Petition,] the PCRA court dismissed [Blenman's] [P]etition for relief without a hearing. [Blenman] filed a timely [N]otice of [A]ppeal to [this Court] on March 5, 2020.

PCRA Court Opinion, 7/23/20, at 2-3 (footnote added). Blenman subsequently filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Blenman now presents the following questions for our review:

A. Did the PCRA court err and abuse its discretion in dismissing Claim #3 (ineffective assistance of counsel) without an evidentiary hearing, because former defense counsel had no reasonable basis for failing to file and litigate a Rule 600 motion in order to protect [] Blenman's rights under the [s]peedy [t]rial [c]lause of the Sixth Amendment and Rule 600 of the Pennsylvania Rules of Criminal Procedure[,] and also had no reasonable basis for failing to obtain [Blenman's] medical records for the suppression hearing in a

_____

[2] The PCRA court states in its Opinion that Blenman filed a Petition for allowance of appeal, and that the Pennsylvania Supreme Court denied his Petition. However, our review of the record reveals that Blenman did not file a petition for allowance of appeal. Additionally, Blenman states in the instant Appellate Brief that he did not appeal this Court's decision. Brief for Appellant at 8.

timely manner, all of which prejudiced [Blenman] by compounding the loss of pre-sentence confinement credit caused by the [d]ue [p]rocess violation described in Claim #1?

B. Did the PCRA [c]ourt err and abuse its discretion in dismissing Claim #4 (ineffective assistance of counsel) without an evidentiary hearing, because former defense counsel lacked a reasonable basis for failing to cross examine Officer Opalski at the suppression hearing about a) the location and timing of the two purported sightings of [] Blenman prior to the stop by police; and, b) the mischaracterization of the gun recovered from [] Blenman as a "Dirty Harry gun," as such cross-examination would have cast doubt on the officer's testimony and eliminated these "articulable facts" from the suppression court's Fourth Amendment "reasonable suspicion" analysis, thereby prejudicing [Blenman] by [the trial court's] denial of his suppression [M]otion?

C. Did the PCRA [c]ourt err and abuse its discretion in dismissing Claim #2 (ineffective assistance of counsel) without an evidentiary hearing, because former defense counsel lacked a reasonable basis for failing to take any action to respond to the unconstitutional conduct of the First Judicial District (and/or its agents) in changing [] Blenman's bail type to ROR, as described above, such as by filing a motion to revoke ROR bail. As a result of former defense counsel's conduct, [was] Blenman [] prejudiced by the loss of presentence confinement credit and suffered illegal imprisonment?

D. Did the PCRA [c]ourt err in dismissing Claim #1 ([d]ue [p]rocess and Eighth Amendment violations) without an evidentiary hearing, because the Court of Common Pleas of Philadelphia County ([t]he First Judicial District of Pennsylvania), and/or agents thereof, violated [] Blenman's [d]ue [p]rocess rights under the Pennsylvania and United States Constitutions, his Eighth Amendment [r]ights under the United States Constitution, and his rights afforded by state and local rules governing bail (including [Pa.R.Crim.P. 529]), by changing [] Blenman's bail type from monetary to [ROR] without providing notice or a hearing to [] Blenman and without [] Blenman's knowledge or consent, which caused [] Blenman to lose presentence confinement credit and suffer illegal imprisonment?

E. Did the PCRA [c]ourt err and abuse its discretion in denying [] Blenman's discovery [M]otion filed on March 15, 2018, and

supplemented on April 16, 2019, when the Commonwealth did not oppose the [M]otion[] and when [Blenman] demonstrated exceptional circumstances which justified discovery under Rule 902(E)(1)?

Brief for Appellant at 4-5 (issues reordered).

The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Moreover, [a] PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion.

The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Williams*, 244 A.3d 1281, 1286-87 (Pa. Super. 2021) (citations omitted).

In his first claim, Blenman argues that his trial counsel was ineffective in failing to protect his right to a speedy trial pursuant to Pennsylvania Rule of Criminal Procedure 600(A)(2)(a), the Sixth Amendment to the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution. *See* Brief for Appellant at 41-54. Pertaining to Rule 600, Blenman argues that the time between his filing of the January 10, 2013, Motion to Suppress, and the trial court's December 1, 2014, Order denying the Motion should not be

excluded or excused. *Id.* at 41-46. According to Blenman, the delay occurred because his counsel failed to obtain medical records that would have supported his Motion, and the Pennsylvania Department of Corrections failed to honor Trial Court Writs that ordered Blenman to be brought to court for hearings. *Id.* at 42-46. Blenman states that his trial counsel failed to file a Motion to Dismiss pursuant to Rule 600; trial counsel's omission was not part of a reasonable trial strategy; and Blenman was prejudiced as a result. *Id.*

Additionally, Blenman claims that his rights were violated pursuant to the United States and Pennsylvania Constitutions. *Id.* at 47-51. Blenman argues that the Commonwealth did not exercise due diligence in securing transportation for his presence at court proceedings, and the resulting delay should have been attributable to the Commonwealth. *Id.* Blenman asserts that this delay caused him prejudice at trial, because he suffered from oppressive pre-trial incarceration. *Id.* at 52-54.

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove, by a preponderance of the evidence, that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that [the a]ppellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa. Super. 2014). "A

PCRA petitioner must address each of these prongs on appeal." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018). Counsel is presumed to be effective and the burden is on the appellant to prove otherwise. ***Commonwealth v. Hanible***, 30 A.3d 426, 439 (Pa. 2011). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

In its Opinion, the PCRA court set forth the relevant law, cogently and thoroughly addressed Blenman's claim, and concluded that it lacks merit. ***See*** PCRA Court Opinion, 7/23/20, at 10-33. Specifically, regarding Rule 600, the PCRA Court determined that the time due to trial counsel's failure to obtain medical records was chargeable to Blenman, and that the time due to the Department of Corrections' failure to bring Blenman to court was not chargeable to the Commonwealth. ***Id.*** at 17-22 (citing ***Commonwealth v. Mines***, 797 A.2d 963, 965 (Pa. Super. 2002) (stating that "[d]elays resulting despite the issuance of a bringdown and writ for the defendant's appearance are not chargeable to the Commonwealth.")). As a result, the PCRA court concluded that Blenman was brought to trial before the adjusted run date pursuant to Rule 600. ***Id.*** at 10-25. The PCRA court further concluded that Blenman's rights under the Pennsylvania and United States Constitutions were not violated because the Commonwealth exercised due diligence in bringing Blenman to trial. ***Id.*** at 25-33. Accordingly, the trial court concluded, Blenman's underlying claim lacks merit. ***Id.*** at 31-33. We agree with the

sound reasoning and determinations of the PCRA court as set forth in its Opinion, and we affirm on this basis regarding Blenman's first claim. ***Id.*** at 10-33.

In his second claim, Blenman argues that his trial counsel was ineffective in cross-examining Officer Opalski at the pre-trial suppression hearing. ***See*** Brief for Appellant at 55-69. According to Blenman, Officer Opalski's testimony regarding two key pieces of evidence was incredible. ***Id.*** Blenman references Officer Opalski's testimony regarding the distance between the two locations where Officer Opalski viewed Blenman, and the size of the gun the officers watched Blenman discard during their pursuit of Blenman, and recovered thereafter. ***Id.*** Blenman states that the distance between the locations where Officer Opalski saw Blenman was much closer than the distance to which he testified, and the gun that was recovered was much smaller than the size to which Officer Opalski testified. ***Id.*** at 59-60, 62-68. Blenman argues that his trial counsel was ineffective in failing to point out these inconsistencies, and that his trial counsel lacked a reasonable trial strategy for his inactions. ***Id.*** at 60-62, 62-69. Blenman further claims that he was prejudiced, because had his trial counsel questioned Officer Opalski regarding these topics, the trial court would have found Officer Opalski's testimony incredible, and granted his Motion to Suppress the firearm. ***Id.***

In its Opinion, the PCRA court cogently and thoroughly addressed Blenman's claim, and concluded that it lacks merit. ***See*** PCRA Court Opinion,

7/23/20, at 38-43. Specifically, the PCRA court found that Blenman was not prejudiced by his trial counsel's cross-examination, because the trial court gave minimal weight to Officer Opalski's testimony regarding the distance between the two areas in which Blenman was sighted, and the exact size of the firearm. *Id.* at 39-40, 42-43; *see also id.* at 39 (stating that the trial court found Officer Opalski possessed probable cause to stop Blenman based on his testimony that the locations where Blenman was spotted were high-crime areas, and that the firearm Blenman was carrying was heavy enough to create "labored walking and [a] large bulge" in Blenman's front waistband). We agree with the sound reasoning and determinations of the PCRA court as set forth in its Opinion, and we affirm thereon regarding Blenman's second claim. *Id.* at 38-43.

We will consider Blenman's third and fourth claims together, as they are related. In his third claim, Blenman argues that his due process rights were violated when the trial court modified his bail, from ten percent of $500,000 to ROR, without providing him with notice and without holding a hearing. *See* Brief for Appellant at 27-36. Blenman states that even though he was eligible to be released from prison, he was nonetheless held on a detainer for a parole violation on another case. *Id.* at 32-35. Blenman asserts that as a result, he remained incarcerated, but did not receive credit for the time that he served

following the change in his bail. *Id.* According to Blenman, he lost 1,225 days of credit for time served as a result.[3] *Id.* at 33.

In his fourth claim, Blenman argues that his counsel was ineffective in failing to take any action in response to the bail changing without a hearing and without Blenman receiving notice. *See* Brief for Appellant at 36-40. Blenman states that his trial counsel had no reasonable basis for failing to address his change in bail, and that his counsel's ineffectiveness caused him prejudice because he was denied significant credit for time served as a result of counsel's inaction. *Id.* at 39-40.

Pennsylvania Rule of Criminal Procedure 529 governs the procedure for modification of bail orders. Rule 529 states, in relevant part, as follows:

> (C) The existing bail order may be modified by a judge of the court of common pleas:
>
> > (1) at any time prior to verdict **upon motion of counsel for either party with notice to opposing counsel and after a hearing on the motion**; or
> >
> > (2) **at trial or at a pretrial hearing in open court on the record when all parties are present**.

Pa.R.Crim.P. 529(C) (emphasis added).

---

[3] Blenman admits that a portion of the time he spent in prison as a result of the detainer was credited to his Lebanon County case. Brief for Appellant at 32. Blenman argues that he was still denied credit for a large portion of his time served, and he would have received more credit had the trial court not modified his bail. *Id.* at 32-33. It is unclear from Blenman's Appellate Brief whether 1,225 days is the total amount of credit Blenman had accrued, or whether it was the remaining amount of credit he was owed after receiving credit on his Lebanon County case.

Here, the record reveals the trial court modified Blenman's bail, on December 6, 2012, without holding a hearing and without affording Blenman notice. The certified record does not include an Order effectuating the change, documentation that Blenman was issued notice, or even a motion by the Commonwealth to change bail. Indeed, the sole indication in the certified record that Blenman's bail was changed is a notation on the docket, from December 6, 2012, indicating "Bail Type Changed."[4] Accordingly, we remand for a hearing to determine whether Blenman's due process rights were violated, whether he was denied effective assistance of counsel, and whether he is entitled to credit for time served.

In his fifth claim, Blenman argues that the trial court erred in denying his Motions for discovery related to his PCRA Petition. *See* Brief for Appellant at 70-71. In his first Motion for discovery, Blenman requested production of the Commonwealth's Motion to change Blenman's bail, if it existed, and any other bail-related documents. *See* Motion for Discovery, 3/15/18, at 2. In his Supplemental Motion, Blenman requested documents related to the procedure for issuing and processing writs to transport a prisoner to court for hearings. *See* Supplemental Motion for Discovery, 4/16/18, at 2. Blenman

_____

[4] We note that Blenman attached to his Amended PCRA Petition a purported copy of the December 6, 2012, Order modifying bail. The Order, which lacks an original time-stamp from the date it was filed, indicates that the Commonwealth "presented" a Motion to modify Blenman's bail. However, there is no other indication that a hearing was held, or that Blenman was notified of the Commonwealth's Motion.

claims that these documents were necessary to support his PCRA claims. **Id.** at 71. According to Blenman, the "unusual facts" of his case constitute "extraordinary circumstances" that justify discovery under Pa.R.Crim.P. 902(E). **Id.**

> We review the denial of discovery for an abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record, discretion is abused.

**Commonwealth v. Crispell**, 193 A.3d 919, 939 (Pa. 2018) (citation and quotation marks omitted).

Pennsylvania Rule of Criminal Procedure 902(E) provides, in relevant part, that "no discovery shall be permitted at any stage of the [PCRA] proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902. "A showing of good cause requires more than just a generic demand for potentially exculpatory evidence." **Crispell**, 193 A.3d at 940 (citation and quotation marks omitted).

Here, even if the documents requested by Blenman exist, their production would not assist his claims. Regarding the bail documents, even if the Commonwealth had motioned to change bail, the certified record is still devoid of any evidence that a hearing took place, and that Blenman received notice of the change in bail. Regarding the writ and transportation procedure documents, even if such documents were produced, the delay in trial attributable to the Pennsylvania Department of Corrections' failure to

transport Blenman to court would still not be chargeable to the Commonwealth.  **See Mines**, **supra**.  Accordingly, we conclude that the trial court did not err in denying Blenman's Motions for discovery.  **See** Pa.R.Crim.P. 902, **Crispell**, **supra**.

Order affirmed in part, reversed in part, and remanded for further proceedings.  Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Nichols did not participate in the consideration or decision of this case.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/28/21

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-13908-2012
:
:
vs. :
:
:
KEVIN BLENMAN : SUPERIOR COURT
Appellant : NO. 838 EDA 2020

---

## OPINION

KENNEDY, J.                                                    July 23, 2020

Kevin Blenman (hereinafter "Appellant") appeals from the February 26, 2020, order,

entered in the Philadelphia County Court of Common Pleas, dismissing his petition for relief

filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The

relevant facts and procedural history follow below.

## FACTS AND PROCEDURAL HISTORY

The PCRA court recounts the facts underlying the present appeal. Briefly, the Honorable

Carolyn Nichols summarized the facts as follows[1]:

On November 5, 2012, Philadelphia police officer Jeffrey Opalski [(Officer
Opalski)], along with his partner Officer Mundrick, were on patrol in an
unmarked police car in plain clothes. At the time, Officer Opalski had been a
police officer for two and a half years with ten [firearm-related] arrests, along
with specific training in firearms and the methods in which they are carried on a
person. The officers were traveling along the 5100 block of Viola St[reet] in
Philadelphia, when they observed [Appellant] standing in front of an abandon[ed]
building. Officer Opalski testified that drug sales are typically conducted in and
around abandoned properties. The officers were patrolling in that specific area
because there were reports of drug sales and gun violence associated with rival

---

[1] Prior to joining the bench of the Superior Court in 2018, Judge Nichols sat on the Philadelphia County Court of Common Pleas. Judge Nichols was the original jurist to hear Appellant's December 1, 2014, motion to suppress that was later denied. Judge Nichols authored a November 14, 2016, 1925(a) Opinion supporting her denial of relief.

drug gangs. As the officers drove down Viola St[reet], [Appellant] looked in their direction, turned and walked through an alleyway next to an abandoned house. The officers then continued down Viola St[reet], circled the block a few times, and again spotted [Appellant] on a nearby block. At this time, he was walking with a noticeable limp and had a large bulge in the front area of his waistband. The officers stopped their car, exited and identified themselves as police officers. Immediately [Appellant] grabbed his waistband area and ran from the officers. After running for about a block, the officers observed [Appellant] remove a large silver revolver from his waistband and discard it in a pile of trash bags. He was arrested shortly thereafter.

[Appellant] was taken to a local hospital for some minor injuries and then released back to police custody around 2:00 a.m. the following day. [Appellant] was initially too groggy to be interviewed at that time. On November 6, 2012, at around 3:20 a.m.[,] Detective [Matthew] Maurizio read [Appellant] his Miranda warnings and conducted a post-arrest interview.[2] [Appellant] did not appear to be in any distress at that point, was not injured, and was lucid in his recollection. [Appellant] then gave a very detailed statement of his activities that night, including where and from whom he received the gun and what he was intending to do with it. He read and signed the statement along with his Miranda warnings.

*Commonwealth v. Blenman*, No. 2430 EDA 2016, at 1-2 (Pa. Super. filed September 5, 2017) (unpublished memorandum) (citing Trial Court Opinion, 11/14/2016, at 2-3). Following his arrest, Appellant attended a preliminary arraignment at which his bail was set at ten percent of $500,000. On November 21, 2012, Appellant attended his preliminary hearing at which his three charges were held for court. By order, dated December 6, 2012, Appellant's bail status was changed from the previous monetary bail to a "release on recognizance" ("ROR") bail. Appellant remained in custody due to a detainer issued by the Pennsylvania Board of Probation and Parole.

On January 23, 2013, Appellant filed an omnibus pre-trial motion, including a motion to suppress physical evidence. On December 1, 2014, following several delays, a hearing on Appellant's motion to suppress was heard and was subsequently denied. Following a stipulated bench trial on February 3, 2016, Appellant was found guilty of three violations of the Uniform Firearms Act. For his convictions, Appellant was sentenced on April 14, 2016, to an aggregate

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

term of five to ten years' confinement and a consecutive term of five years' probation. Appellant did not file any post-sentence motions.

On May 11, 2016, Appellant filed a timely notice of appeal to the Superior Court. The Superior Court subsequently affirmed Appellant's convictions and judgment of sentence on September 5, 2017, and the Pennsylvania Supreme Court denied his petition for allowance of appeal. On September 20, 2017, Appellant timely filed the present petition for relief pursuant to the PCRA. After being appointed counsel, Appellant filed an amended petition for relief through counsel. On February 26, 2020, the PCRA court dismissed Appellant's petition for relief without a hearing. Appellant filed a timely notice of appeal to the Superior Court on March 5, 2020.

## MATTERS COMPLAINED ON APPEAL:

Appellant's 1925(b) Statement asserts:

1. The PCRA court erred in dismissing [Appellant's claim] without an evidentiary hearing because the Court of Common Pleas of Philadelphia County, and/or agents thereof, violated [Appellant's] Due Process rights under the Pennsylvania and the United States Constitution, his Eighth Amendment rights under the United States Constitution, and his rights afforded by state and local rules governing bail, by changing [Appellant's] bail type from monetary to "Release on Recognizance" without providing notice or a hearing to [Appellant] and without [his] knowledge or consent, which caused Appellant to lose presentence confinement credit and suffer illegal imprisonment.

2. The PCRA court erred in dismissing [Appellant's claim] without an evidentiary hearing, because the former defense counsel lacked a reasonable basis for failing to take any action to respond to the unconstitutional conduct of the [Court of Common Pleas] in changing [Appellant's] bail type, as described above, such as by filing a motion to revoke ROR bail. As a result of former defense counsel's conduct, [Appellant] was prejudiced by the loss of presentence confinement credit and suffered illegal imprisonment.

3. Th PCRA court erred in dismissing [his third claim] without an evidentiary hearing because former defense counsel has no reasonable basis for failing to file and litigate a Rule 600 motion in order to protect [Appellant's] rights under the Speedy Trial Clause of the the Sixth Amendment and Rule 600 of the Pennsylvania Rules of

3

Criminal Procedure when the Commonwealth lacked due diligence in bringing [Appellant] to trial by ensuring that the Court's writs were honored and enforced by government agencies.

4. The PCRA court erred in dismissing [Appellant's fourth claim] without an evidentiary hearing, because former defense counsel lacked a reasonable basis for failing to cross-examine Officer Opalski at the suppression hearing [concerning several sub-issues).

5. The PCRA court erred and abused its discretion in denying [Appellant's] discovery motion . . . because [Appellant] demonstrated exceptional circumstances which justified discovery under [Pennsylvania Rule of Criminal Procedure 902(e)(1).

## DISCUSSION

Kevin Blenman ("Appellant"), appeals from the PCRA court's dismissal of his petition for relief filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. In reviewing the denial of PCRA relief, a reviewing court examines whether the PCRA court's determination "is supported by the record and free from legal error." *Commonwealth v. Rainey*, 928 A.2d 215, 223 (Pa. 2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Lippert*. 85 A.3d 1095, 1100 (Pa. Super. 2014).

After a thorough and independent review of the record, the PCRA court must now conclude that remand back to the PCRA court for an evidentiary hearing limited to his bail modification claims is the proper course. The other matters Appellant has raised do not warrant relief on the basis that he has not met his burden of proof. Accordingly, the PCRA court respectfully requests the Superior Court to remand the above matter.

### I. Appellant is Entitled to Remand for an Evidentiary Hearing on Alleged Due Process Violations.

In his first claim for relief, Appellant contends that his constitutional right to Due Process was violated through the court's failure to credit for time served. The failure to award credit for

time served goes to the legality of a sentence, which means the claim is cognizable under the PCRA. *See Commonwealth v. Menezes*, 871 A.2d 204, 207 (Pa. Super. 2005). Appellant states that he is entitled to 1,225 days of credit for time because no bail modification hearing occurred in open court, nor did counsel from either party file a motion for bail modification. *See* App. Pet., 4/16/20, at 6. The Commonwealth alternately agreed Appellant is entitled to relief, but should receive only 633 days of credit for time served. *See* Comm. Mot., 7/31/19, at 3 (unpaginated). Although the certified record contains a December 6, 2012 order modifying Appellant's bail status, there is no evidence supporting that a bail hearing consistent with a motion from either party, nor that a request to modify bail terms occurred in open court.

### A.    The Right to Due Process

The claim asserted by Appellant warrants a brief foundational discussion imposed upon the courts to award bail. Pennsylvania Rule of Criminal Procedure 529(c) states a bail order may be modified by a judge of the court of common pleas "at any time prior to verdict upon motion of counsel for either party with notice to opposing counsel and after a hearing" or at "trial or at a pretrial hearing in open court on the record when all parties are present." Pa.R.Crim.P. 529 (c)(1-2). The claim put forth by Appellant sounds in procedural due process.[3]

### i.    Appellant and Procedural Due Process Claim

Appellant first relies upon procedural due process of the opportunity to be heard. *See Commonwealth v. Turner*, 80 A.3d 754, 761 (Pa. 2013). In pertinent part, the Fourteenth Amendment states "nor shall any State deprive any person of life, liberty, or property without due process of law," and protects "the individual against arbitrary action of government." *Id.* at

---

[3] In light of the PCRA court's agreement that remand to the lower court for an evidentiary hearing is the proper remedy, the PCRA court need not address Appellant's substantive due process claim attendant to the trial court's failure to hold a bail modification hearing.

763. Likewise, Article I, Section 9 of the Pennsylvania Constitution also guarantees a criminal defendant the right to due process. The constitutional right to due process guarantees more than fair process, covering a substantive sphere as well, "barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (citing *Daniels v. Williams,* 474 U.S. 327, 331 (1986)). "Due process" is not susceptible to precise definition; rather, the phrase expresses the requirement of "fundamental fairness," a requisite "whose meaning can be as opaque as its importance is lofty." *Lassiter v. Dep't of Soc. Serv. of Durham County,* 452 U.S. 18, 24–25 (1981).

Within procedural due process, the government is prohibited from depriving individuals of life, liberty, or property unless it provides the process that is due. While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. *Commonwealth v. Wright,* 961 A.2d 119, 132 (Pa. 2008). Thus, courts examine procedural due process questions in two steps: the first asks whether there is a life, liberty or property interest that the state has interfered with; and the second examines whether the procedures attendant to that deprivation were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989).

### ii.    Pennsylvania Bail Procedures

Appellant raises his claim under the argument that his rights to due process – both substantive and procedural – were violated through the action of improper bail measures. It is axiomatic that bail is the surety required and given for the release of a person in custody of the law, conditioned upon a written undertaking that the person will appear when required and do all other things stipulated therein. *See* Pa.R.Crim.P. 103. The fundamental purpose of bail in a

criminal case is to secure the presence of the accused at trial. *See Commonwealth v. McDonald*, 382 A.2d 124 (Pa. 1978). The Eighth Amendment to the United States Constitution states that "Excessive bail shall not be required." The Eighth Amendment, fundamental to our system of justice, has been found to apply to the states through the operation of the Fourteenth Amendment. *Schilb v. Kuebel*, 404 U.S. 357 (1971).

In Pennsylvania, our state constitution guarantees the right to bail before trial and states that all defendants "shall be bailable by sufficient surities . . . unless no condition or combination of conditions other than imprisonment will reasonable assure the safety of any person and the community when the proof is evident or presumption great[.]" Pa. Const. Art. I., § 14. The right to release on bail before trial is conditioned upon the defendant's giving adequate assurance that he will appear for trial. If the court reasonably concludes that a defendant may not appear for trial, no matter how high the bail is set, the court may deny bail altogether. *See Commonwealth v. Sloan*, 907 A.2d 460 (Pa. 2006).

Here, there are two distinct categories of release on bail at issue: Release On Recognizance ("ROR") and Release on Monetary Condition. ROR is conditioned only upon the defendant's written agreement to appear and to comply with the conditions of the bail bond. Pa.R.Crim.P. 524(c)(1). Alternatively, a release on monetary condition is a release conditioned upon the defendant's compliance with a monetary condition imposed pursuant to Rule 528. *See* Pa.R.Crim.P. 524(c)(3). Rule 528 provides factors a bail authority may consider to determine whether it is necessary to impose a monetary condition of bail and permitting the bail authority to require a sum of money – not to exceed ten percent – of the full amount of the monetary condition. *See* Pa.R.Crim.P. 528. Although the initial bail authority determined monetary bail was necessary under the constructs of Pa.R.Crim.P. 523, a subsequent judge of the Philadelphia

7

County Court of Common Pleas entered a December 6, 2012 order modifying Appellant's bail from a monetary condition to ROR. Our Rules of Criminal Procedure are clear that bail modification before verdict may only occur "upon motion of counsel for either party with notice to opposing counsel and after a hearing" or at "trial or at a pretrial hearing in open court on the record when all parties are present." Pa.R.Crim.P. (c)(1-2).

Despite the mandates contained within the Rule 529(c), Appellant's bail was modified without notice to opposing counsel and without a hearing; likewise, the bail modification order was not entered in open court with all parties present. The Commonwealth asserts that it was the standard practice of the President Judge in Philadelphia to issue orders for bail modification from a monetary condition to ROR when, as here, the defendant is additionally detained on a parole violation. *See* Com. Letter Brief, 10/3/18, at 2-3. Such orders were entered in an effort to reduce the population of the Philadelphia County prison system. *See id.*

### iii. Appellant was not afforded procedural due process consistent with the protection of his Constitutional rights.

Appellant contends that it was through the court entering an order that scythed a path to release on bail ROR that his constitutional right to freedom from bodily restraint. There can be little doubt that within the present case, Appellant had a considerable liberty interest in having a bail hearing with sufficient notice before a court. This did not occur. The record observes only that an order was entered by the President Judge that modified the bail. Despite the President Judge's authority to adopt regulations to manage the court's business, such authority should not extend to bail modifications without notice or a hearing. Indeed, the hallmarks of procedural due process include adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal. *See Turner*, 80 A.3d at 764. Not only was Appellant not

provided adequate notice, but was instead not provided <u>any</u> notice and had no opportunity to be heard on the matter.

### 1. The PCRA court respectfully asks the Superior Court to remand the case back to the lower court for an evidentiary hearing.

As reflected above, Criminal Rule of Procedure 529 states that a bail before a verdict has been entered may only be modified after notice to opposing counsel and the opportunity to be heard on the matter. Turning first the procedural due process inquiry, the PCRA court finds that Appellant did have a liberty interest that has been interfered with by the Commonwealth. The liberty interest at stake is the possibility that the bail modification prevented Appellant from receiving the proper amount of credit for time served for the present case. Turning to the second prong of the procedural due process inquiry, the procedures attendant to the bail modification were not sufficient to protect Appellant's liberty interest. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Here, remand back to the PCRA court for an evidentiary hearing to determine any pre-sentence confinement credit is the proper course. It is well understood that original jurisdiction over a proceeding under the PCRA shall be in the court of common pleas. *See* 42 Pa.C.S.A. § 9545(a). The PCRA bestows original jurisdiction in which a petitioner suffered a violation of the Constitution of the Commonwealth or laws of the United States that so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See* 42 Pa.C.S.A. § 9543(a)(2)(i). The PCRA court may hold a hearing when the petition for post-conviction relief, or the Commonwealth's response, raises material issues of fact. Pa.R.Crim.P. 908(a)(1). The disparity between the amount of credit each party asserts is due presents a genuine issue of material fact; the Commonwealth states that only 633 days must be awarded, while Appellant asserts he is due over 1,200 days.

### B. The claim for ineffective assistance by trial counsel in failing to file a motion to revoke bond is moot.

In his second claim for relief, Appellant contends that he received ineffective assistance of trial counsel because counsel did not file or litigate a motion to revoke bond. However, given the PCRA court's disposition of Appellant's due process claims, a remand on the basis of ineffective of assistance of trial counsel is moot. The PCRA court agrees that remand is proper so that it may hold an evidentiary hearing on the claims. The relief available to Appellant under the ineffective assistance of counsel remains largely similar to the relief under the due process claims.

## II. The PCRA Court Properly Denied Relief because Appellant was Tried before His Adjusted Run Date.

In his third claim, Appellant asserts the PCRA court erred in dismissing his petition for relief on the basis that his right to effective assistance of counsel was violated in failing to protect his right to a speedy trial.

### A. Rule 600 Generally

It is generally understood that Rule 600 "was designed to prevent unnecessary prosecutorial delay in bringing a defendant to trial." *Commonwealth v. Brock*, 61 A.3d 1015, 1021 (Pa. 2013). Further, our Supreme Court has held that:

> Rule 600 serves to protect a defendant's speedy trial rights, as well as society's right to effective prosecution of criminal cases. To balance these rights, Rule 600(G) requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control. Further, the rule states, [i]f, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

10

*Commonwealth v. Selenski*, 994 A.2d 1083, 1088 (Pa. 2010) (internal citations omitted).[4]

In relevant part, Rule 600 requires that trial shall commence within 365 days from the date on which the complaint is filed. *See* Pa.R.Crim.P. 600(a). This straightforward calculation is known as the mechanical run date. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. Super. 2007). However, those periods of delay caused by a defendant are excluded from the computation of the length of time of any pretrial incarceration. Pa.R.Crim.P. 600(c). Following these exclusions, if any, the court arrives at an adjusted run date by extending the mechanical run date to account for these exclusions. *See Ramos, supra*, at 1102. Any other delay that occurs, despite the Commonwealth's due diligence, is deemed excusable and results in further adjustments to the effective run date. Pa.R.Crim.P. 600(g); *see also Ramos*, 936 A.2d at 1102 (explaining that "excusable delay is a legal construct that takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence") (internal citation and punctuation omitted). Further, to obtain relief pursuant to Rule 600, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges. *Commonwealth v. Hunt*, 858 A.2d 1234, 1243 (Pa. Super. 2004) (*en banc*).

To establish that a delay is excusable, the Commonwealth must demonstrate that it proceeded with due diligence by a preponderance of the evidence. *Selenski*, 994 A.2d at 1089. Due diligence is "fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Id.* Due diligence "includes, among other things, listing a case for trial prior to the run date, preparedness for trial prior to the run date, and keeping adequate records to

---

[4] The Pennsylvania Supreme Court adopted a new Rule 600, effective July 1, 2013. Here, the criminal complaint was filed prior to the new rule; accordingly, the PCRA court applies the former version. *See Commonwealth v. Brock*, 61 A.3d 1015, 1016 n.2 (Pa. 2013).

11

ensure compliance with Rule 600." *Ramos*, 936 A.2d at 1102. The Commonwealth "should be held to the requirement that it exercise due diligence at all times during the pendency of a case." *Commonwealth v. Hawk*, 597 A.2d 1141, 1145 (Pa. 1991). Thus, the Commonwealth must act with due diligence "throughout the period," for each delay not caused by the defendant. *See Commonwealth v. Hill*, 736 A.2d 578, 586 (Pa. 1999). This requires affirmative action by the Commonwealth. *See Hawk*, 597 A.2d at 1145.

## B. Appellant's trial was conducted before the adjusted run date.

In order to better illustrate the timeline of Appellant's case, the PCRA court produces the table below. The information – where possible – includes the scheduled court date, the next scheduled court date after a continuance request, the reason for the continuance, whether the record notes a writ was prepared for the next scheduled court date and the number of days between the scheduled court date and the next scheduled court date.

| Dates | Activity | Days Delay | Excludable or Excusable | Adjusted Run Date |
|---|---|---|---|---|
| 11/5/12 – 12/6/12 | Arrest; Bail changed to ROR on 12/6/12. | 31 | **NO** | 11/5/13 |
| 12/6/12 – 1/9/13 | Held for court on 11/26/12; Information filed 1/10/13 | 34 | **NO** | 11/5/13 |
| 1/9/13 – 1/23/13 | Plea Status | 14 | Excludable | 11/19/13 |
| 1/23/13 – 11/8/13 | Motion to Suppress filed; scheduled EPD. | 289 | Excludable | 8/24/14 |
| 11/8/13 – 1/2/14 | Continuance; Defense request to obtain medical records. | 55 | Excludable | 10/18/14 |
| 1/2/14 – 1/6/14 | Writ Not Honored | 4 | Excusable | 10/22/15 |
| 1/6/14 – 3/7/14 | Continuance; Case reassigned to Judge Nichols; Defense request | 60 | Excludable | 12/21/14 |

12

| | | | | |
|---|---|---|---|---|
| | to obtain medical records; EPD scheduled. | | | |
| 3/7/14 – 5/2/14 | Writ Not Honored | 56 | Excusable | 2/15/15 |
| 5/2/14 – 5/12/14 | Continuance; Defense request. | 10 | Excludable | 2/25/15 |
| 5/12/14 – 5/19/14 | Continuance; Writ not honored. | 7 | Excusable | 3/4/14 |
| 5/19/14 – 7/8/14 | Continuance; Writ not honored. | 50 | Excusable | 4/23/15 |
| 7/8/14 – 8/19/14 | Continuance; Commonwealth witness unavailable due to officer training. | 42 | Excusable | 6/4/15 |
| 8/19/14 – 10/20/14 | Continuance; Writ not honored. | 62 | Excusable | 8/5/15 |
| 10/20/14 – 12/1/14 | Continuance; Commonwealth witness unavailable; Listed for trial 5/26/15. | 42 | Excusable | 9/16/15 |
| 12/1/14 – 5/26/15 | EPD trial date set by prior judge on 12/1/14. | 176 | NO | 9/16/15 |
| 5/26/15 – 6/1/15 | 1/13/15 case transferred to Judge Kennedy; Continuance; Writ not honored. | 6 | Excusable | 9/22/15 |
| 6/1/15 – 1/25/16 | Set earliest possible date; Commonwealth ready to proceed. | 238 | Excusable | 5/17/16 |
| 1/25/16 – 1/26/16 | Continuance; court had another trial in progress. | 1 | Excusable | 5/18/16 |
| 1/26/16 – 1/29/16 | Continuance; court had another trial in progress. | 3 | Excusable | 5/21/16 |

13

| 1/29/16 – 2/3/16 | Continuance; Writ not honored. | 5 | Excusable | 5/25/16 |

Because Appellant's trial commenced after the November 5, 2013, mechanical run date under Rule 600, the PCRA court is required to perform a due diligence analysis as set forth in Pa.R.Crim.P. 600(d). *See Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013). Consistent with the table reflected above, the PCRA court found only three periods of time that were not either excludable or excusable. The first two periods – which collectively run from November 5, 2012 through January 9, 2013 – are not excludable because these periods must be considered as normal trial progression. *See Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (holding that period between the filing of a complaint and a status conference was not excludable for Rule 600 purposes as the normal progression of a case). The 176-day period of time from the hearing on Appellant's motion to suppress and the next hearing date – which ran between December 1, 2014 and May 26, 2015 – was also found to not be excludable or excusable under Rule 600. The PCRA court concluded that this period of time cannot be excluded because it qualified as the normal progression of a case. *See id.* Accordingly, the PCRA court calculated Appellant's adjusted run date as May 25, 2016. Appellant's trial occurred on February 3, 2016; therefore, his trial began 112 days before the adjusted run date.

### 1. The PCRA Court Found the Time Between the Filing of the Information and the Hearing on the Motion to Suppress as Excludable.

The PCRA court turns first to Appellant's claim concerning the amount of time the PCRA court found excludable or excusable under Rule 600. Consistent with Pennsylvania case law, the suppression court specifically found such time as excluded. Time begins for the purposes of Rule 600 when a jury is impaneled, or voir dire or any other substantial step has begun – a suppression hearing is not such a substantial step. *See Commonwealth v. Gunter*, 445

A.2d 831 (Pa. Super. 1982). In the present case, Appellant filed his motion to suppress on January 10, 2013. The motion to suppress was not decided until December 1, 2014. Accordingly, the 677 days between January 10, 2013 – when Appellant filed his motion to suppress – and December 1, 2014 – when his motion to suppress was decided – should be found excluded from the computation because this delay is chargeable to the defense.

    **i.    The Motion to Suppress did not Lead Directly into the Guilt Determining Process.**

In addressing whether the time between the filing of Appellant's motion to suppress and the hearing should be found excludable, the PCRA court must whether: (1) the motion to suppress lead directly to the guilt determining process; and (2) whether the court had expended a substantial commitment of time and resources into the hearing. It has generally been held under Rule 600 that trial is deemed to commence on the date the trial judge calls the case to trial or the defendant offers a guilty plea or *nolo contendere*. *See* Pa.R.Crim.P. 600(a)(1); former Pa.R.Crim.P. 600(b). Under Rule 600, trial commences when the trial judge, after determining the parties are present, directs them to proceed: (1) to *voir dire*; (2) to opening argument; (3) to the hearing of any motions which have been reserved for the time of trial; (4) the taking of testimony; or (5) to some other such first step in the trial. *See* Pa.R.Crim.P. 600, cmt.; *see also Jones v. Commonwealth*, 434 A.2d 1197 (Pa. 1981). Relevant here, trial has commenced when the suppression motion is heard if the testimony from that hearing is incorporated into the trial. *See Commonwealth v. Byrd*, 378 A.2d 921 (Pa. 1977); *see also Commonwealth v. Fisher*, 368 A.2d 762 (Pa. Super. 1976).

Generally, a hearing on a pretrial motion will mark the commencement of trial under Rule 600 only if the defendant is adequately warned that the hearing has been reserved for the time of trial, and the hearing actually leads directly into the guilt determining process.

*Commonwealth v. Machi*, 439 A.2d 1230 (Pa. Super. 1982). The proper test for whether a hearing on a pretrial motion constitutes a commencement of trial for purposes of Rule 600 is whether the commencement of the hearing on the motion constituted a substantial commitment of the court's time and resources which would lead directly to the determination of guilt or innocence. *See Jones, supra.* Under this test, the Superior Court has held that trial did not commence with the suppression motion when the suppression motion was heard months before trial. *See Commonwealth v. Williams*, 378 A.2d 906 (Pa. Super. 1977).

The hearing for Appellant's motion to suppress cannot be found to have constituted a substantial step. The suppression court did not reserve the hearing for the time of trial and it did not lead directly into the guilt determining process. There having been a gap of several months between the suppression hearing and Appellant's trial further supports this conclusion. *See Williams*, 378 A.2d at 906. Therefore, the time between when Appellant filed his motion to suppress and the hearing on the motion on December 1, 2014 should be found excludable in total because the time is attributable directly to Appellant.

### 2. Appellant was tried before the adjusted run date even if the time before his motion to suppress was decided.

In the alternative the time between the filing of the information and the hearing on the motion to suppress is not found completely excludable, all of the time within that range is excludable or excusable such that Appellant's trial still occurred before the adjusted run date.

The PCRA court found the 42 days between July 8, 2014, and August 19, 2014, as also excusable because the police officer was not available for the July 8, 2014 court date. *See e.g., Commonwealth v. Wendel*, 165 A.3d 952 (Pa. Super. 2017). Likewise, the PCRA court found the additional 42 days between October 20, 2014, and December 1, 2014 as excludable because the police officer was again not available for the hearing. *Id.* The Commonwealth acted with due

16

diligence in both situations because it had located the police officer witness, determined if the officer could attend the hearing and made it known to opposing counsel and the trial court.

### 3. The Period of Delays Resulting from the Writs are not Chargeable to the Commonwealth.

Appellant next contends that the Commonwealth failed to exercise due diligence in securing his presence at trial through its management – or mismanagement – of writs and the issuance of bringdown orders. In his petition for relief, Appellant cites the following dates as causes for delay because, while writs were issued, Appellant was not brought to court: (1) March 7, 2014; (2) May 12, 2014; (3) May 19, 2014; (4) August 19, 2014; (5) December 1, 2014; (6) May 26, 2015; and (7) January 29, 2016. *See* App. Pet., 4/16/18, at 16. Appellant hinges this Rule 600 claim around the premise that the Commonwealth failed to proactively secure Appellant's presence at hearings before the court. The Superior Court has held that Rule 600 applies the premise that:

> so long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crimes.

*Commonwealth v. Holt*, 175 A.3d 1014, 1019 (Pa. Super. 2017) (citing *Commonwealth v. Selenski*, 919 A.2d 229, 232 (Pa. Super. 2007)). Accordingly, the "Commonwealth's stewardship therefore must be judged by what was done . . . rather than by what was not done." *Id.* (emphasis added).

Our appellate courts have consistently held that delays resulting despite the issuance of a bringdown and writ for a defendant's appearance are not chargeable to the Commonwealth. *See Commonwealth v. Mines*, 797 A.2d 963, 965 (Pa. Super. 2002). In *Mines*, the Superior Court held that the "period of delay was occasioned by the inability to bring [the defendant] to

17

Philadelphia from the state prison system. The prosecutor cannot be charged with responsibility for the delay because the "system seems unable to find, transport, and house defendants" in their custody. *Id.* Appellant's case parallels *Mines* because the Philadelphia District Attorney's Office cannot be faulted for the inability of the system to "find, transport, and house" Appellant. *See id.*

Here, Appellant correctly notes that the court had issued writs for transportation and bringdown orders for Appellant to appear in court. This is a fact reflected within the record. The present case is distinguished from the defendant in *Commonwealth v. Thompson*, 136 A.3d 178 (Pa. Super. 2016), because the trial court in *Thompson* had not issued any writs to transport the defendant, there was no evidence suggesting the district attorney's office had requested writs, and the court sought to excuse the delay on the basis of the assistant district attorney's representation that her typical practice was to request the writs for transportation. The Commonwealth secured writs for Appellant's appearance at each court date. This is not simply a case in which Appellant was held within the Philadelphia Prison System and the Commonwealth had substantial control over Appellant's appearance. The often convoluted process to obtain the presence of a state custody inmate requires cooperation from several agencies.

In his petition for relief, Appellant avers that the Office of the District Attorney "plays a key role in the transportation of state and county prisoners to court for their court proceedings." App. Pet., 4/24/19, at 3. Appellant further asserts that the District Attorney "is responsible for, among other things, reviewing the 'Draft Bus List' composed of names of inmates who are to be transported to court and ensuring that it is up to date and accurate." *Id.* Appellant's attempt to shift complete responsibility upon the Philadelphia District Attorney's Office for the transportation list mischaracterizes that office's responsibilities. The Transportation Procedure for State Prisoners states that "Court Administration shall generate a draft Bus List . . . for all

18

defendants in state custody who have . . . trials or sentencings for a particular week" in court. *See* App. Pet., 4/24/19, Ex. P-19, at 1. The Transportation Procedure also directs that copies "of the draft bus list and writ list shall be forwarded to the Director of the Criminal Justice Prison Program Population Unit, the District Attorney and Defender Association for review." *Id.* Finally, the Transportation Procedure offers that signed transportation orders "shall be sent by the Director of the Criminal Justice Prison Population Unit to the Department of Corrections[.]" *Id.* at 2.

Appellant contends the Commonwealth should have proactively secured his appearances at the dates listed within his petition for relief. The Commonwealth did so. The ultimate fault rests with the Department of Corrections – not the Commonwealth – and its failure to honor the trial court's transportation orders and does not represent an effort by the Commonwealth to evade Appellant's speedy trial rights. *See Holt*, 175 A.3d at 1019. Consistent with the *Holt* Court's directive, the PCRA court looked to the action that was taken by the Commonwealth and not the actions the Commonwealth is alleged to have failed to take. *See id.*

As reflected above, Appellant's case is distinguished from *Mines* because transportation writs were issued for each court appearance and appear within the record. Unlike the situation in *Mines*, the PCRA court did not have to rely upon the prosecutor's typical practice to secure writs and had evidence in the record the writs were secured well beforehand. Therefore, because the Commonwealth did not act with the intention to evade Appellant's fundamental right to a speedy trial after having secured transportation writs, the PCRA court found the time attributable to the failure by agencies – other than the Philadelphia District Attorney's Office – to honor the writs as excusable from the calculation of Appellant's adjusted run date.

### 4. The Period of Delays Resulting from Medical Records are Chargeable to Appellant.

As reflected above, Appellant contends that delays resulting from trial counsel's failure to earlier request Appellant's medical records impermissibly caused a delay of the proceedings in violation of his right to a speedy trial. This claim raises two distinct questions: (1) whether trial counsel was ineffective for failing to earlier request Appellant's medical records; and (2) whether the delay from requesting the medical records is attributable to Appellant in calculating his adjusted run date. The PCRA court is constrained to find that Appellant has not demonstrated trial counsel was ineffective in requesting his medical records and that the resulting delay is excluded from calculating Appellant's adjusted run date.

### i. Appellant's requests for continuances to obtain medical records are excludable.

The PCRA court begins by noting the Rules of Criminal Procedure are explicitly clear that "those periods of delay caused by a defendant are excluded from the computation of the length of time of any pretrial incarceration." Pa.R.Crim.P. 600(c). The 55 days between Appellant's November 23, 2013, and January 2, 2014, should be excluded from the computation of time because Appellant had specifically requested the continuance in order to attain Appellant's medical records for the motion to suppress. *See Commonwealth v. Aaron*, 804 A.2d 39 (Pa. Super. 2002). The 60 days between the respective January 6, 2014, and March 7, 2014, court dates are also excluded because the defense had requested the continuance – again – to secure Appellant's medical records. *Id.* The PCRA court found the following ten-day period between May 2, 2014 and May 12, 2014 also excludable from the computation because the continuance was requested by Appellant. Consistent with Rule 600(c) and applicable case law, the periods of delay attributable to Appellant in requesting continuances to obtain medical records are flatly excluded from the computation of the adjusted run date.

20

### ii. Appellant has failed to demonstrate that trial counsel was ineffective by not earlier requesting his medical records.

Appellant contends that his trial counsel was ineffective for failing to earlier request his medical records in preparation for the motion to suppress evidence. Specifically, Appellant asserts that his trial counsel was ineffective and did not protect his constitutional right to a speedy trial by "failing to obtain [Appellant's] medical records in a timely fashion[.]" App. Pet., 4/24/19, at 2. In his Amended Petition for Relief, Appellant acknowledges that his trial counsel "obtained [Appellant's] medical records on or about March 11, 2014, [while] the motion to suppress hearing was not held until December 1, 2014, a delay of 264 days." *Id.*

It has long been held that to obtain relief, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (1987). Within the PCRA, it is the Appellant, as petitioner, that bore the burden to plead and prove his claims. *See* 42 Pa.C.S.A. §§ 9543(a), 9545(b); *see also Commonwealth v. Bardo*, 105 A.3d 678 (Pa. 2014) (noting that counsel is presumed effective and petitioner bears burden to prove ineffective assistance of counsel). Given these constructs, Appellant has not met this required burden to prove ineffective assistance of counsel regarding the nexus between his medical records and any alleged Rule 600 violation.

Simply stated, Appellant has not provided any evidence that an earlier request for his medical records would have resulted in a different outcome – namely an earlier trial date. The PCRA court has not been provided any date of when trial counsel actually filed a request for Appellant's medical records that would provide context of how an "earlier" request for such

21

records would have lead to an earlier to trial date. Although not an issue in the present appeal, Appellant wished to establish through his medical records that the statement he provided to Philadelphia Police was coerced and not given voluntarily as he was allegedly under the influence of pain medication at the time of his police interview. *See* N.T. Suppression Hearing, 12/1/14, at 39 (asking how detective "came to the conclusion that the [Appellant] is of clear mind"). The statement Appellant provided to authorities was later used at trial and trial counsel had a definitive interest in precluding the statement's admission at trial through any reasonable means, including a theory of coercion due to Appellant's potential intoxication from pain medication. Given that his motion to suppress both the physical evidence and his statement to police, the medical records represented a critical evidentiary issue that required Appellant's medical records. Therefore, Appellant's trial counsel cannot be found to have rendered ineffective assistance of counsel when Appellant has not offered a compelling argument to plead and prove each prong of the *Strickland* test necessary for relief.

### 5. The Periods Resulting from Judicial Delay are Excusable from the Adjusted Run Date.

Judicial delay can support the "grant of an extension of the Rule 600 run date." *See Commonwealth v. Williams*, 726 A.2d 389, 392 (Pa. Super. 1999), *appeal denied*, 747 A.2d 368 (Pa. 1999). Where the delay is due to congested court dockets, the trial court is to establish "that it has devoted a reasonable amount of time of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business." *Id.* In the context of Rule 600, the distinction between "excludable time" and excusable delay" is as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest,...any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at

22

any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Hunt, supra*, at 1241 (internal citations omitted).

With the exception of two dates prior to the disposition of Appellant's motion to suppress, from the record it appears the Commonwealth was prepared to proceed at each listing. The events that delayed Appellant's trial were due to excludable or excusable time, including the failure of agencies to honor writs, defense requests for continuances, transfers of the case to a different trial judge ordered by court administration, and the crowded criminal docket in Philadelphia County. The PCRA court concluded that the Commonwealth's trial readiness, preparation of writs for each listing constituted due diligence.

As the discussion above reflects, due diligence is a fact-specific concept that "must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort" has been put forth. *Hunt*, 858 A.2d at 1241-42 (emphasis in original). As the *Ramos* Court noted, reasonable effort can include the Commonwealth listing the case for trial prior to the run date to ensure that a defendant is brought to trial within the time prescribed by Rule 600. *See Ramos*, 936 A.2d at 1102. Additionally, the Superior Court has found the Commonwealth to have exercised due diligence when it initially scheduled trial well within the time requirements of Rule 600, but trial was delayed by actions of a defendant beyond the Commonwealth's control. *See Commonwealth v. Hill*, 736 A.2d 578, 592 (Pa. 1999). Further, the Superior Court has held the Commonwealth exercises reasonable effort:

23

when within the run date the Commonwealth was ready to commence trial and was prevented from doing so by an administrative error which resulted in a trial date three days beyond the run date. *Wroten, supra* at 680-81 (holding inadvertent administrative error is not enough to defeat due diligence). *See also Commonwealth v. Corbin*, 568 A.2d 635 (Pa.Super. 1990) (holding inadvertent listing beyond run date due to overburdened docket, meager staff, and administrative breakdown at detention center, excused Commonwealth with respect to unavailability of its witness).

*Hunt*, 858 A.2d at 1241-42.

The PCRA court found that Appellant has not presented any sufficient evidence to demonstrate the Commonwealth failed to act with due diligence. For instance, the trial court was required to continue Appellant's case for a 238-day period between June 1, 2015 and January 25, 2016. The record demonstrates that the Commonwealth did not request a continuance and was ready to proceed to trial, but the court's crowded docket prevented an earlier trial date. *See Commonwealth v. Preston*, 904 A.2d 1, 14 (Pa. Super. 2006) (stating that judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to expiration of the mandatory period but the court was unavailable because of "scheduling conflicts and the like"). Given the pre-trial disposition of Appellant's motion to suppress, the Commonwealth did not require – or request – significant time for preparation. The Commonwealth appeared ready to proceed at each listing. Indeed, the two trial listings immediately prior to Appellant's trial were continued because the trial court was presiding over trial in a separate case. The PCRA court found the Commonwealth acted with due diligence by trying Appellant within his adjusted run date, securing transportation writs for each listing and being ready to proceed at each hearing. Therefore, Appellant is not entitled to relief on this basis. *See Commonwealth v. Hill*, 736 A.2d 578, 591 (Pa. 1999) (holding that even where a Rule 600 violation has occurred, a motion to dismiss the charges should be denied if the Commonwealth

24

exercised due diligence and the circumstances occasioning the postponement were beyond the control of the Commonwealth).

### C. Appellant's claim for violation of his constitutional right to a speedy trial fails.

Apart from the rule-based right to a speedy trial under the Rules of Criminal Procedure, the constitutional guarantees to a speedy trial continue to provide a separate basis for asserting a claim of undue delay in appropriate cases. *See Commonwealth v. Preston*, 904 A.2d 1, 10 (Pa. Super. 2006) (holding that while Rule 600 was designed to implement the speedy trial rights provided by the federal and state constitutions, the constitutional provisions themselves provide a separate and broader basis for asserting a claim of undue delay). In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court laid out four factors to be considered in determining whether an unconstitutional speedy trial violation has occurred: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant. *Commonwealth v. Terfinko*, 474 A.2d 275 (Pa. 1984).

#### 1. The delay triggers further inquiry under *Barker*, but the Commonwealth did not deliberately or negligently attempt to delay Appellant's case.

In the first step of the analysis under *Barker*, the PCRA court examines whether the delay itself is sufficient to trigger further inquiry; if it does, the reason for the delay is examined, the defendant's assertion of his rights is examined, and, finally any resulting prejudice to the defendant is considered. *See Commonwealth v. Jones*, 299 A.2d 288 (Pa. 1973) (adopting *Barker* within the courts of the Commonwealth). The delay in the present case must trigger further inquiry. Here, there was more than a 38-month delay between Appellant's arrest and his trial date on February 2, 2016. Turning next to the second factor, it has been stated that a deliberate attempt to delay should be weighed heavily against the government, while a "more neutral

25

reason such as negligence . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Commonwealth v. Glover*, 458 A.2d 935, 938-39 (Pa. 1983).

The delay in the instant case was not deliberate. Further, it cannot be said that the delays are based upon the Commonwealth's negligence. The Commonwealth acted with due diligence in securing writs for Appellant's appearance at hearing dates. Since Appellant was held in state custody, attributing fault to the Commonwealth for delays caused by a state agency over which the Commonwealth exercised no control or authority does not sound in negligence. Our Supreme Court has held that a "more neutral reason such as negligence . . . should be weighed less heavily," than a deliberate attempt by the government to delay a defendant's case. *Commonwealth v. Glover*, 458 A.2d 935, 938-39 (Pa. 1983). The PCRA court in weighing the reason behind the delay found no intentional delay or negligence by the Commonwealth and – in considering the reason for the delay – gave it less weight than other factors. For instance, the Superior Court has held that society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of unintended delay or negligent error attributable to the government." *Commonwealth v. Blair*, 699 A.2d 738, 743 (Pa. Super. 1997). Appellant's speedy trial claim is not one with conduct "so affirmatively improper or grossly negligent" by the Commonwealth that due process was violated. *Id.* at 745. Despite the significant temporal history of the present case, Appellant is not entitled to relief because the Commonwealth acted within existing permissible constitutional mandates.

2. **Under the third prong of *Barker*, Appellant's initial assertion of his right to a speedy trial was a legal nullity.**

The PCRA court next addresses the third factor under *Barker*: the defendant's assertion of his rights. Appellant states that the Commonwealth violated his constitutional right to a speedy trial pursuant to Pennsylvania Rule of Criminal Procedure 600. In support of this claim, Appellant relies upon his *pro se* motion to dismiss pursuant to Rule 600 filed on August 17, 2015. Within his petition for post-conviction relief, Appellant observes that no action was taken on the motion by the trial court. The trial court did not act upon Appellant's *pro se* motion to dismiss because it was from precluded from doing so. At the time he filed his *pro se* motion, he was represented by the Defender Association of Philadelphia, who previously entered an appearance on Appellant's behalf.

Appellant did not have the right to file his *pro se* motion because he was represented by counsel. *See Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007), *appeal denied*, 936 A.2d 40 (Pa. 2007) (citing *Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993)) . This means "that his *pro se* [] motion was a legal nullity, having no legal effect." *Nischan*, 928 A.2d 355. As our Supreme Court noted in *Ellis*:

> A defendant has the constitutional right to proceed without counsel if the decision to do so is knowing and voluntary. In *Commonwealth v. Williams*, the court held that the same constitutional right [to represent] oneself does not apply to a defendant represented by an attorney who wishes to act as co-counsel and that the decision as to whether that is to be allowed is in the sound discretion of the trial court.

*Ellis*, 626 A.2d at 1139 (internal citations omitted). In order for a defendant to act as his own counsel, he or she is required to terminate the representation of counsel and then proceed on his or her own behalf pursuant to the rules of criminal procedure. *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998). There is nothing within the record to suggest Appellant requested a *Grazier* hearing or that he had knowingly and voluntarily waived his right to proceed without counsel.

As Appellant's *pro se* Rule 600 motion was a legal nullity, the trial court was precluded from ruling on the motion. Pennsylvania does not accept hybrid representation. *Ellis*, 626 A.2d at 1139. The language contained within the Rules of Criminal Procedure only support this conclusion. For instance, Rule 576 states that in "any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion . . . that has not been signed by the defendant's attorney" then the clerk of courts shall accept it for filing, time stamp it and create a docket entry reflecting the date it was received. Pa.R.Crim.P. 575(a)(4). The filing of a *pro se* motion by a represented defendant does not "trigger any deadline nor require any response," as its main purpose is to merely provide a record of the filing. Pa.R.Crim.P. 576, cmt. It is fundamental that any *pro se* filings that require merits review, including motions, are legal nullities when they are filed by a defendant who is represented by counsel. *See Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010); *Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007), *appeal denied*, 936 A.3d 40 (Pa. 2007).

Within the context of his case, Appellant did not assert his right to a speedy trial until his PCRA petition for relief. Although he filed the *pro se* motion for dismissal, the trial court was precluded from its consideration. Appellant impermissibly asks the PCRA court to find that "defense counsel's failure to endorse and litigate his [*pro se*] speedy trial/Rule 600 motion excuses" his improperly asserted speedy trial motion. App. Pet., 4/16/18, at 18. However, as addressed within this opinion, the failure by defense counsel to file or litigate a motion to dismiss pursuant to Rule 600 would have likely been unsuccessful because Appellant was tried within the adjusted run date. That defense counsel reasonably opted to forego litigating a motion to dismiss pursuant to Rule 600 does not overcome the recognition Appellant's *pro se* motion to dismiss is a legal nullity and cannot excuse the presumption Appellant failed to properly assert

28

his speedy trial rights. Accordingly, it cannot be found Appellant promptly asserted his right to a speedy trial.

### 3. Appellant has not demonstrated prejudice under *Barker*.

Finally, under the fourth prong laid out in *Barker*, Appellant has not demonstrated prejudice. The traditional reasons for finding prejudice in the context of a speedy trial claim include: (1) preventing oppressive pre-trial incarceration; (2) minimizing the anxiety of the accused; and (3) limiting the possibility that the defense will be prejudiced by lost or missing witnesses. *See Commonwealth v. Blair*, 699 A.2d 738, 746 (Pa. Super. 1997).

The PCRA court found little weight under the first prejudice factor of preventing "oppressive pre-trial incarceration" as applied to Appellant's case. In his petition for relief, Appellant asserts that "the change of bail type to 'ROR,' as discussed in Claim 1, severely prejudiced [Appellant] as he was deprived of eight months of sentence credit. In essence, the delay in this case resulted in [Petitioner] being held in custody without legal justification for eight months." App. Pet., 4/16/18, at 19. This alleged claim for prejudice sounds strictly in the award of time-served credit and not Appellant's pre-trial incarceration. As recognized in the discussion above, a significant portion of the delay was caused by the pendency Appellant's pre-trial motion to suppress physical evidence. Our Supreme Court has held that "a reasonable amount of time consumed by the disposition of motions . . . not made for purposes of delay, regardless of who is the moving party, is justifiable delay." *Commonwealth v. McCord*, 644 A.2d 1206, 1211 (Pa. Super. 1994) (quoting *Commonwealth v. Ware*, 329 A.2d 258, 264-65 (Pa. 1974)). Likewise, several of the instances contributing to a delay in Appellant's case resulted from the failure by state agencies to comply with the trial court's transportation orders.

29

Under the second factor in analyzing prejudice under *Barker*, the PCRA court next addresses the need to minimize the anxiety of the accused. The record does not demonstrate what level of anxiety – if any – Appellant suffered as a result of the delay. The Superior Court has stated that the courts "recognize the obvious difficulties one faces when charged with a crime and imprisoned, but [the courts] are not constrained to speculate as to whether the anxiety level was sufficiently high to require" the dismissal of charges. *Commonwealth v. Hicks*, 332 A.2d 452, 455 (Pa. Super. 1974). Appellant has failed to produce any compelling evidence to demonstrate that he suffered anxiety as a result of the delay. The generalized anxiety of which Appellant complains is common to all persons suffering imprisonment and it is not the PCRA court's province to speculate about his complaint without more. *See id.*

Finally, under the third *Barker* factor to determine prejudice, Appellant has not demonstrated that the delay caused the loss of witnesses or impaired his ability to prepare a defense. Appellant has not proffered the name of any witness that could have been called at trial that was subsequently lost due to the delay. Appellant does not allege the impairment of witness' memories, loss of evidence, loss of witnesses or other facts that represented substantial interference with his ability to conduct a defense. To the extent that Appellant claims his state custody interfered with his ability to conduct a defense, the PCRA court found this claim specious – at best – given that Appellant was held at a state correctional facility located within thirty miles of Philadelphia County. Appellant was not shuffled between institutions or transferred to a state correctional facility hundreds of miles from Philadelphia.

In *Commonwealth v. Dallenbach*, 729 A.2d 1218, 1226 (Pa. Super. 1999), the Superior Court remanded the case in which an alleged defense witness was no longer available to testify and, while it might be sufficient to demonstrate actual prejudice, the *Dallenbach* Court remanded

30

because the trial court did not make a specific finding of fact regarding the witness's unavailability and required additional fact-finding. *See Dallenbach*, 729 A.2d at 1226. There exist no such ambiguities here. Appellant has offered only a generalized claim that the delay interfered with his ability to assist in his defense or that potential witnesses may have been lost. Such bald assertions are merely speculation and not the type of actual prejudice the law requires. *See Commonwealth v. DeBlase*, 665 A.2d 427, 438 (Pa. 1995). Therefore, because Appellant has not shown that he was prejudiced by the delay, the PCRA court did not err in denying his petition for relief on the basis of a claimed speedy trial violation.

**D. Appellant's Claim for Ineffective Assistance of Counsel for Alleged Rule 600 Violations Must Fail.**

Appellant asserts that relief is due because his trial counsel – through a failure to litigate a motion to dismiss under Rule 600 – provided ineffective assistance and did not adequately protect both his rule-based right to a speedy trial under Pa.R.Crim.P. 600 and his broader constitutional right to a speedy trial. However, this claim is without merit. To prove counsel was ineffective, a petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *See Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018). Counsel is presumed to have been effective, and the petitioner bears the burden of proving counsel's alleged ineffectiveness. *See Commonwealth v. Wholaver*, 177 A.3d 136 (Pa. 2018). If the petitioner alleging ineffective assistance of counsel fails to prove any of the prongs required to prove ineffective assistance, then his claim must fail. *Sarvey*, 199 A.3d at 452. Additionally, counsel will never be held ineffective for failing to pursue a meritless claim or a frivolous course of action. *See Commonwealth v. Parker*, 469 A.2d 582 (Pa. 1983).

31

Here, Appellant's claim that trial counsel was ineffective for failing to litigate a motion to dismiss pursuant to Rule 600 must fail because it is not of arguable merit and Appellant cannot demonstrate prejudice. Specifically, it is the PCRA court's opinion that because Appellant was tried before his adjusted run date, any motion to dismiss pursuant to Rule 600 would have been denied. Under the Rule 600, it is expressly clear that "to obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges." *Commonwealth v. Brown*, 875 A.2d 1128, 1134 (Pa. Super. 2005). Given the PCRA court's finding that Appellant was tried within the adjusted run date, his trial counsel cannot be ineffective for failing to file a motion to dismiss under Rule 600 when Appellant did not have a valid Rule 600 claim. *See Parker*, 462 A.2d at 582 (stating counsel will not be found ineffective for failing to pursue a frivolous course of action). Looking to the first prong of the test for ineffective assistance of counsel, Appellant's claim cannot be said to have arguable merit since he did not have a valid Rule 600 claim.

Further, Appellant cannot be said to have suffered actual prejudice under the third prong of the test for ineffective assistance of counsel. Prejudice, under *Strickland*, requires a showing that counsel's error "caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error." *Commonwealth v. Dennis*, 17 A.3d 297, 301 (Pa. 2011) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)).[5] Given that the PCRA court has found that Appellant was tried within his adjusted run date, even had trial counsel filed and litigated a motion to dismiss pursuant to Rule 600, Appellant has not proven that the result of the proceeding would have been different. Thus, the PCRA court found that

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

32

Appellant is not entitled to relief on the basis that defense counsel provided ineffective assistance on his Rule 600 claim.

## III. The PCRA Court Properly Found Appellant Received Effective Assistance of Counsel at his Suppression Hearing.

In his next claim on appeal, Appellant avers that the PCRA court erred in dismissing his petition on the basis of ineffective assistance of counsel during the hearing conducted pursuant to his motion to suppress evidence. It is not the province of the PCRA court to reweigh the decisions of the suppression court or consider whether probable cause existed to justify the officer's stop of Appellant. Indeed, this issue has been distinctly litigated and found meritless during Appellant's direct review. *See Commonwealth v. Blenman*, 1430 EDA 2016 (Pa. Super. filed September 5, 2017) (unpublished memorandum). Instead, the PCRA court was tasked with deciding whether the performance of Appellant's counsel at the suppression hearing itself fell within the range of permissible constitutional standards. The PCRA court finds that it did.

With respect to claims of ineffective assistance of counsel, the courts begin with the presumption that counsel is effective. To prevail on an ineffectiveness claim, a petitioner must satisfy, by a preponderance of the evidence, the Sixth Amendment performance and prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has divided the performance component of *Strickland* into two subparts dealing with arguable merit and reasonable strategy. *Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (2014). Thus, to prevail on an ineffectiveness claim, Appellant must show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his or her action or omission; and Appellant suffered prejudice as a result. *Id.* (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987)). With regard to "reasonable basis," we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an

33

alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Spotz*, 47 A.3d at 76 (quoting *Commonwealth v. Williams*, 587 Pa. 304, 899 A.2d 1060, 1064 (2006)). To establish *Strickland* prejudice, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *Id.*

## A. Constitutional Standards Supporting an Investigatory Stop.

The PCRA court turns first to the constitutional implications raised by Appellant's claims. To begin, our appellate courts have long recognized that:

> [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. The suppression court is also entitled to believe all, part or none of the evidence presented. Finally, at a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (*en banc*).

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop.

*In re M.D.*, 781 A.2d 192, 196 (Pa. Super. 2011). Although not every interaction between a citizen and a law enforcement officer implicates the Fourth Amendment, "[t]he Fourth Amendment, of course, applies to all seizures of the person, including seizures that involve only a brief detention short of a traditional arrest." *Brown v. Texas*, 443 U.S. 47, 50 (1979) (internal quotation mark omitted). For purposes of the Fourth Amendment, a person is "seized" when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). When a police officer "accosts an individual and restrains his freedom to walk away, he has 'seized' that

34

person." *Brown*, 443 U.S. at 50 (quoting *Terry*, 392 U.S. at 16). In assessing the impression that would be given to a reasonable person, a court must determine "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991). Further, our Supreme Court has interpreted:

> Article I, § 8 protection more broadly than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. Stated another way, when one is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.

> In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment.

> The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

> Among the factors to be considered in forming a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight.

> While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. Likewise, presence in a high crime area alone or flight alone does not form the basis for reasonable suspicion. However, a combination of these factors may be sufficient.

> \*        \*        \*

Case law has established that certain facts, taken alone, do not establish reasonable suspicion. However, a combination of these facts may establish reasonable suspicion.

*In re M.D.*, 781 A.2d at 196-197; *see also Blenman, supra*, at 5-6.

### B. Philadelphia Police had the requisite reasonable suspicion to stop Appellant based upon the totality of the circumstances.

In assessing whether Appellant's asserted ineffective assistance of counsel claims would have resulted in a different outcome, the PCRA court turns to the facts relied upon by the suppression court to determine whether reasonable suspicion existed for Appellant's stop.

At the hearing on Appellant's motion to suppress physical evidence, the suppression court offered the following findings of fact:

> [S]tarting with Officer Jeffrey Opalski, who is a Nineteenth District police officer. He's been a police officer for about two-and-a-half years. He served at [the] Twenty-Fourth and the Nineteenth [Police Districts]. He's had training. Obviously, he's a police officer, as well as improvised and concealed weapons training.
>
> Officer Opalski, who is the driver and Officer Mundrick on 11/5/12 about 1 a.m. The officer says he first sees [Appellant] in the 5100 block of Viola Street in front of an abandoned property which evidently has been the source of the neighborhood, of various things and it's about a block away from Aberdeen Avenue where there has been drama and homicide, different things going on. 5100 Viola was identified as a high narcotics area. There had been shootings linked to drug sales in that area.
>
> Officer Opalski said he did about ten gun arrests at the time of the incident and he's done fifty today, but at the time of the incident he ha[d] only done about ten arrests. The officer said he saw the defendant in front of this abandoned property. It's uncontested there was no illegal activity going on. There was no hand-to-hand . . . The officer perceived that [Appellant] looked at him and [walked] into a breezeway and that's the end of the encounter. He wasn't stopped. The officers did not get out of the car.
>
> Police Officer Mundrick and Opalski went on with their evening. They went on around this area of 52nd and Lancaster. I guess it's some kind of caddy corner street Bibleway Street . . . There is a church and a vacant lot, so the officer[s] are driving around and they went on to see [Appellant] again and at this time – now 52nd and Lancaster the officer said is a high robbery area, high gun crime area

36

and he sees [Appellant] again and they notice that he has some kind of labored walk and they notice some kind of bulge or some kind of heavy object and the way [Appellant] is walking with this object. It's heavy and it's causing him to walk a certain way.

*     *     *

[Officer Opalski] talked about concealed weapons in the waistband and gun arrests he's done. The gun was in the front waistband, so he starts to worry and started to think there may be a gun, so, yes, he pulls over and Police Officer Mundrick I believe is the one that gets out and says stop . . . [Appellant then] goes into a headlong flight which is unprovoked flight.

[Appellant] goes into a headlong run and is stopped in the parking lot [of a club] and while Mundrick is chasing [Appellant] in this parking lot of this club, there is a chained fence which is about a block away from the 5100 block of Lancaster Avenue. Officer Opalski is a driving [an unmarked police] car, the lights and sirens are activated, so it's clearly the police. [Appellant] is still running. The officer testified that he saw [Appellant] throw a Dirty Harry gun which has been identified on the property receipt as a .357 Magnum, which is a big silver gun, so it's a big bulge in there and [Appellant] throws the gun in the trash . . . [Appellant] throws that gun down. Police Officer Mundrick retrieves this gun. [Appellant] is then seized and arrested in the parking lot[.]

N.T. Suppression Hearing, 12/1/14, at 81-87.

In his petition for relief, Appellant highlights two inconsistencies within Officer Opalski's testimony in arguing that further cross-examination about these two factors would have resulted in a different outcome at the suppression hearing. Appellant's claim is unavailing because evaluations for whether reasonable suspicion existed for a police stop are made under the totality of the circumstances. *Commonwealth v. Hicks*, 208 A.3d 916, 927 (Pa. 2019). Even held in isolation, the amount of time Officer Opalski believes to have elapsed between his first and second sightings of Appellant would not have resulted in a different outcome. Likewise, the actual barrel length of the recovered firearm and the description would not have produced a different result.

37

## C. The PCRA court's findings about alleged ineffective assistance of counsel are supported by the record.

Appellant has failed to prove beyond a preponderance of the evidence that he received ineffective assistance of counsel at his suppression hearing. While Appellant pleads the required elements within his petition for relief, such claims are simply not supported by the record. Appellant, in both issues pertaining the suppression hearing, has failed to demonstrate prejudice and that – but for the inaction of his trial counsel – the outcome of the suppression hearing would have been different. To the contrary, the record provides ample support for the decisions made by trial counsel and had a reasonable basis for such strategies. Accordingly, Appellant's claim for ineffective assistance of counsel pertaining to his motion to suppress hearing must fail. *See Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (holding the failure to prove any prong of the test will defeat an ineffectiveness claim).

### 1. Appellant's claims related to the failure by counsel to cross-examine the officer about the location and timing.

In his first issue concerning his representation during the motion to suppress, Appellant asserts that trial counsel was ineffective in failing to cross-examine the testifying police officer about the location and timing of the two times Appellant was observed the night of his arrest. *See* App. Pet., 4/24/19, at 4-5. Appellant contends that Officer Opalski testified that he first observed Appellant on the 5100 block of Viola Street and, after cutting through an alleyway, observed Appellant walking near the 5200 block of Lancaster Avenue approximately two minutes later. *See id.* Appellant states that the suppression court relied upon Officer Opalski's testimony about observing Appellant in front of an abandoned house on Viola Street as an "articulable fact" that supported reasonable suspicion for a stop. Appellant then states that because where police encountered Appellant a second time was not within "a hundred yards" of Viola Street, that the

38

encounter could not have been within "one or two minutes." In assessing Appellant's claim for ineffective assistance of counsel, the PCRA court's opinion that if further cross-examination occurred that it would not have changed the hearing's outcome.

It appears evident from the record that the suppression court gave minimal weight in the amount of time and locations between when Officer Opalski observed Appellant. At the hearing on Appellant's motion, the suppression court stated – after seeing Appellant on Viola Street – Officer Opalski "went on with [his] evening." N.T. Suppression Hearing, 12/1/14, at 83. The suppression court noted that the 5100 block of Viola Street was "identified as a high narcotics area" and the area of 52nd Street and Lancaster is a "high robbery area, [a] high gun area and [the officer] sees [Appellant] again and they notice he has some kind of labored walk and they notice some kind of large bulge or heavy object" that appears to cause Appellant to walk in the strained manner. *See id.* at 82, 84. Indeed, in its 1925(a) Opinion, the suppression court emphasized that after first encountering Appellant on Viola Street, the officers "circled the block a few times, and again spotted [Appellant] on a nearby block. At this time, he was walking with a noticeable limp and had a large bulge area in the front of his waistband." Trial Court Opinion, 11/14/16, at 2. Thus, it was not necessarily the amount of time between the encounters, but instead the specific areas – and his labored walking and the large bulge – in which the officers encountered Appellant that the suppression court afforded greater weight.

In his petition for relief, Appellant contends that his trial counsel was ineffective for failing to cross-examine Officer Opalski at greater length about the timing and distance between the two encounters. To succeed on a claim of ineffective assistance of counsel, the petitioner must prove there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *Spotz*, 47 A.3d at 76 (quoting *Commonwealth*

39

*v. Williams*, 587 Pa. 304, 899 A.2d 1060, 1064 (2006)). Appellant has not met this threshold

requirement for relief. To support this claim, Appellant notes that the distance between the 5100

block of Viola Street and the 5200 block of Lancaster Avenue "given the obstruction imposed on

pedestrian travel by the railroad tracks, is approximately one-half mile, or 880 yards." App. Pet.,

4/24/19, at 7. The salient details upon which the suppression court relied were that the officers

first observed Appellant on Viola Street, and then encountered him again a short time later on

Lancaster Avenue. It was the role of the suppression court, sitting as the fact-finder, to pass on

the credibility of witnesses and the weight given to their testimony. *Commonwealth v. Clemens*,

66 A.3d 373, 378 (Pa. Super. 2013). With respect to the second encounter, the suppression court

found that officers observed him in a "high robbery area, high gun area" with a large bulge in the

front of his waistband that is consistent with a firearm. N.T. Suppression Hearing, 12/1/14, at 84.

It is the PCRA court's opinion that no amount of cross-examination about the timing and

distance would have ended with a different result. Accordingly, Appellant's claim on this basis

fails.

          a.  **Appellant's claim regarding the failure
to cross-examine the witness about the recovered
firearm's size.**

With regard to his claim that trial counsel was ineffective at the hearing held pursuant to

his motion to suppress evidence, Appellant claims that counsel was constitutionally ineffective in

her failure to cross-examine the testifying police officer about a discrepancy in the size of the

recovered firearm. This claim must fail.

As Appellant notes in his Petition for Relief, Officer Opalski had completed a course in

"improvised and concealed weapons training." N.T. Suppression Hearing, 12/1/14, at 33; *see

also* App. Pet., 4/24/19, at 7. There is no testimony that Officer Opalsky was offered as a

40

firearms expert. It is not reasonable to require a police officer in pursuit of a subject during his unprovoked flight to know the difference of 1.5 inches. During his testimony at the suppression hearing, Officer Opalski testified he observed Appellant "remove a large silver revolver from his waistband and he threw it on the ground near a pile of trash." N.T. Suppression Hearing, 12/1/14, at 22. Later, Officer Opalski described it as a "large silver revolver. It was a Dirty Harry gun to the best *description* I have . . . From the movies. The large – it was a foot, I guess, in length." *Id.* at 23 (emphasis added).

Simply stated, the exacting standard Appellant proposes – requiring absolute accuracy down to the inch of a firearm's length – does not prove prejudice under *Strickland* or *Pierce*. Even had trial counsel attempted to impeach Officer Opalski's account, it squarely reconciles with the officer's testimony that it was merely a "description" and the estimated length he provided was a "guess." N.T. Suppression Hearing, 12/1/14, at 22-23. Instead, the critical element of Officer Opalski's testimony is that Appellant had a "large silver revolver." *Id.* at 22. Digressing into argument about the firearm's actual length ignores the pertinent question before the PCRA court: if trial counsel had further cross-examined Officer Opalski about the firearm's size whether there would have been a differing result. Without making reference to a "Dirty Harry" style of gun, the suppression court found one must "look to the totality of it all and with the size of the gun. This is a very large gun, so you're talking about a .357 Magnum . . . This is a large bulge." *Id.* at 98. The suppression court also found that at issue is "a .357 Magnum. This is a big gun on a little guy." *Id.* at 100.

As the Superior Court noted on direct review, and Appellant raises again in his petition for relief, Appellant's reliance upon *Commonwealth v. Martinez*, 588 A.2d 513 (Pa. Super. 1991), is misplaced. In *Martinez*, the trial court had improperly mixed together facts occurring

41

both before the stop and as a result of the stop. *See id.* at 516. As the suppression court noted at Appellant's hearing, according to *Martinez* "a bulge is not enough . . . but here you have more than just the bulge. You have to look at the totality of it all[.]" N.T. Suppression Hearing, 12/1/14, at 98. Contrary to *Martinez*, Officer Opalski articulated his specific observations – prior to stopping Appellant – that formed the basis of his particularized suspicion that Appellant was carrying a firearm in his waistband. *See Blenman, supra,* at 9. The suppression court, consistent with Pennsylvania case law, evaluated the testimony under the totality of circumstances. *See United States v. Cortez,* 449 U.S. 411, 417-18 (1981); *see also Commonwealth v. Hicks,* 208 A.3d 916, 927 (Pa. 2019).

Here, it was in the suppression court's sole province as fact-finder to pass on the credibility of witnesses and the weight given to their testimony. *Commonwealth v. Clemens,* 66 A.3d 373, 378 (Pa. Super. 2013). The suppression court resolved any discrepancies in favor of the Commonwealth. Appellant was alleged to be in possession of a silver Colt Lawman MKIII .357 magnum revolver with a wood grip. While Appellant correctly notes that Dirty Harry carried a .44 magnum Smith & Wesson Model 29, this argument largely ignores the underlying similarities between the two firearms: that both are large, silver revolver-style handguns. *See* App. Pet, 4/24/19, at 8. Even assuming, *arguendo,* that had trial counsel further cross-examined Officer Opalski about the recovered firearm, nothing in the record supports a conclusion that a different result was likely. Officer Opalski, with ten firearm arrests until that point in his career, observed a bulge in Appellant's pants and his "labored" walking was consistent – based upon the officer's experience and training – with the possession of a firearm in his waistband. In his petition for relief, Appellant offers no argument about the weight of a Colt Lawman MKIII handgun and how it weighs less than a "Dirty Harry" gun. In the present context, it was the

perceived presence of a *heavy* firearm in Appellant's waistband that drew Officer Opalski's attention. It was a belief later demonstrated to be true.[6] This belief, formed before any interaction with Appellant, demonstrates that Officer Opalski had a particularized suspicion not drawn from the length of the barrel alone.

Trial counsel acted within the permissible bounds required for effective assistance of counsel. At the suppression hearing, Appellant's counsel elected not to further question Officer Opalski concerning the barrel length of the recovered firearm. The conduct of counsel will only be found not to have a reasonable basis unless an alternative not chosen offered a potential for success substantially greater than the course actually pursued. *See Spotz,* 47 A.3d at 76. No alternative potential for success that is substantially greater than counsel's chosen strategy has been offered. The suppression court made credibility determinations and found that Officer Opalski, observing a heavy firearm in Appellant's waistband, had the requisite probable cause to stop him. Therefore, since the record supports the PCRA court's determination that the outcome would not have differed, Appellant's claim for ineffective assistance of counsel is meritless.

## IV. The PCRA Court Properly Denied Appellant's Motion for Discovery because it Failed to Prove Exceptional Circumstances.

In his final issue raised on appeal, Appellant contends the PCRA court erred and abused its discretion in denying his motion for discovery because Appellant had demonstrated exceptional circumstances that justified discovery. While the circumstances underlying Appellant's case – and his present claim – are unique, the information sought in Appellant's

---

[6] The Smith & Wesson Model 29 and Colt Lawman MKIII each weigh 2.9 pounds and 2.3 pounds, respectively. *See* https://www.smith-wesson.com/firearms/model-29-sw-classics-6-12-blue; *see also* https://www.gunsinternational.com/guns-for-sale-online/revolvers/colt-revolvers---lawman/colt---lawman-mkiii----357-remington-magnum.cfm?gun_id=101353500.

discovery motion nonetheless do not qualify as "exceptional circumstances" as contemplated within Rule 902(e).

The Pennsylvania Rules of Criminal Procedure state that discovery shall only be permitted during the PCRA stage of proceedings upon leave of court after a showing of "exceptional circumstances." Specifically, Rule 902(e) provides, in relevant part:

**(E) Requests for Discovery**

(1) Except as provided in paragraph (e)(2), no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances.

(2) On the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause.

Pa.R.Crim.P. 902(e). Neither the PCRA nor the Pennsylvania Rules of Criminal Procedure define the term "exceptional circumstances." *See Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa. Super. 2012). The Superior Court has held that it will not disturb a trial court's determination regarding the existence of exceptional circumstances warranting post-conviction discovery unless the trial court abused its discretion. *See Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support as to be clearly erroneous. *Commonwealth v. Kneller*, 999 A.2d 608, 614 (Pa. Super. 2010).

In *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998), the Pennsylvania Supreme Court considered an appellant's claim that a PCRA court inappropriately denied a request for discovery due to both the overbreadth of the discovery request and the lack of specificity associated with the accompanying statement of necessity. The Supreme Court rejected the

44

appellant's argument and found that he had "essentially requested wholesale discovery of whatever information he 'believed' to exist and/or of entire files so that he could discern whether his assertions were true." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 91 (Pa. 1998). The purpose of the PCRA is "to provide relief to the wrongfully convicted by ferreting out colorable claims of wrongful convictions." *Commonwealth v. Cox*, 146 A.3d 221, n.11 (Pa. 2016). The PCRA is not intended to afford defendants a means to relitigate past issues. *See Commonwealth v. Buehl*, 658 A.2d 771, 775 (Pa. 1995). Indeed, our Supreme Court has further held that the PCRA is not a "fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." *Commonwealth v. Wharton*, 811 A.2d 978, 989 (Pa. 2002); *see also Commonwealth v. Keaton*, 45 A.3d 1050 (Pa. 2012). Likewise, a general assertion of "necessity will not suffice to establish" good cause or exceptional circumstances. *See Commonwealth v. Williams*, 732 A.2d 1167, 1175 (Pa. 1999).

In his motion for discovery, Appellant sought: (1) a copy of the Commonwealth's motion to modify Appellant's bail status; and (2) any "other other bail-related documents in this case . . . including the [c]ourt's policies and procedures pertaining to the changing of bail type." App. Mot., 3/15/18, at 2. Appellant notes that "no such bail motion appears on the docket report" and that it does not appear in the court file. *See id.* Even assuming, *arguendo*, that such a motion existed, Appellant has not demonstrated how discovery from the Commonwealth would alter his present situation or so undermined the truth determining that no reliable adjudication of guilt or innocence could have taken place.

### A. Discovery seeking the Commonwealth Motion for Bail is not an exceptional circumstance because the bail order's history is clear from the record.

Appellant contends that he was entitled to discovery in the present case because a motion from the Commonwealth requesting a change in bail status does not appear in the record. While such a motion does not appear in the record, the Commonwealth provided a sufficient explanation that renders the discovery request unnecessary. Turning first to the Bail Order itself, Judge Woods-Skipper entered an order that stated "Bail ROR to State. Original bail to be reinstated when inmate returns to [Philadelphia Prison System]." Order, 12/16/12. From the plain meaning of the order, Judge Woods-Skipper intended for Appellant to be "released" ROR to the Commonwealth for his parole violation and have his original monetary bail reinstated upon his transfer back to the Philadelphia Prison System.

The basis for Appellant's bail modification is further supported in a letter brief filed by the Commonwealth. Specifically, the Commonwealth detailed that Judge Woods-Skipper "routinely assigns orders changing a defendant's bail to 'ROR' for a new arrest where that individual has a state violation of parole in order to manage Philadelphia's county prison population." Com. Letter Brief, 10/3/18, at 2-3. Instead, then-President Judge Woods-Skipper made it a practice to – in her capacity as overseeing the court's role in reducing the county prison population – modify the bail conditions of parole violators. The PCRA court denied Appellant's motion for discovery because there is support within the record that such a motion to modify bail likely does not exist. Appellant has failed to demonstrate how – if such a motion does exist – discovery for the motion is an exceptional circumstance. The language of Judge Woods-Skipper's bail order that Appellant was bailed "ROR to [the] State" reasonably suggests the

order was entered for the purpose of reducing the Philadelphia County prison population when read in conjunction with the Commonwealth's letter brief.

**B.      The PCRA court properly denied Appellant's motion for discovery because the mere belief such documents exist did not warrant discovery.**

Appellant avers the PCRA court erred in denying his motion for discovery because a copy of the Commonwealth's bail motion is required for proper disposition of his claims. However, in his motion for discovery before the PCRA court, Appellant failed to set forth any evidence that such a Commonwealth motion existed. The present claim parallels the defendant in *Abu-Jamal*. In *Abu-Jamal*, our Supreme Court held that a petitioner for relief under the PCRA is not entitled to review of a court file to potentially discover information he "believes" to exist or discern whether his allegations were true. *See Abu-Jamal*, 720 A.2d at 91. The foundation upon which Appellant bases his request is his belief that bail documents may exist. Although in name Appellant does not seek wholesale review of his entire case file, his discovery request may necessarily devolve into a scavenger hunt seeking any document that may support his theory that bail was changed without due process.

**C.      The PCRA court properly denied Appellant's motion for discovery because it is impermissibly vague.**

Appellant further sought "any other bail-related documents in this case" that pertain to the court's policies in modifying bail status. *See* App. Mot., 3/15/18, at 2. However, Appellant noted that he "anticipates" that such procedures may support his claim and his request fails to identify the precise documents within the file that pertain to his claims. *Id.* at 3. Although Appellant has framed his discovery request as "anticipat[ing]" the existence of such documents, nothing within the record suggests that such documents exist or have been otherwise withheld by the District Attorney. It becomes feasible that many documents within Appellant's case file that

47

"any" document could arguably hold relevance to his claim. Rule 902(e) was written to preclude such expansive interpretations for discovery requests. Appellant does not cite which specific documents sought in connection to his petition for relief. Accordingly, the PCRA court found that the discovery request was impermissibly vague under Pa.R.Crim.P. 902(e) and did not warrant relief.

### D. Appellant has failed to prove the PCRA court abused its discretion in denying his motion for discovery.

Finally, the PCRA court asserts that it did not abuse its discretion in denying Appellant's motion for discovery relative to his petition for relief. Appellant has failed to prove that "exceptional circumstances" existed that sufficiently required the production of documents related to his bail modification. The letter-in-brief from the District Attorney's Office demonstrates why the bail modification occurred without sufficient notice. The request for discovery did not assert with the required specificity the documents Appellant sought other than those that are the "bail-related documents [to] this case." *See* App. Mot., 3/15/18, at 2. Documents that may fit within this broad definition are broad in scope and would require examination of Appellant's case file.

However, the PCRA court has conceded that remand for an evidentiary hearing is the proper course given the inadequate due process protections afforded to Appellant during his pre-trial bail modification process. Permitting discovery to seek the impetus for the bail modification obfuscates the larger concern of how to award Appellant his time-served credit – if such time is due. Accordingly, the PCRA court finds that while it did not abuse its discretion in denying Appellant's request for discovery, Appellant is nonetheless entitled to relief related solely to his time-served claim based upon inadequate due process protections. Given that his request for discovery touches only the failure to award proper credit for time-served – and the respective

48

ineffective assistance of counsel claim – Appellant need not seek remand on this basis for his remaining claims.

## CONCLUSION

Appellant appeals from the February 26, 2020, order, entered in the Philadelphia County Court of Common Pleas dismissing his petition for post-conviction relief, filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. For the reasons reflected above, the PCRA court believes that Appellant has raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief. *See Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004). Appellant has raised a colorable claim that his due process rights were not adequately protected during the pre-trial bail modification process and may have contributed to the improper calculation of credit to his sentence. However, Appellant has failed to demonstrate that relief is due based upon his remaining claims. Therefore, the PCRA court respectfully requests that the order denying Appellant's petition for relief be vacated so that an evidentiary hearing may be held in the lower court solely for the purpose to determine any potential time-served credit due to Appellant.

BY THE COURT:

_____
SEAN F. KENNEDY, J.